UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HARDWIRE, LLC,

Plaintiffs,

-against-

**MEMORANDUM AND ORDER**
Case No. 1:21-CV-6870 (FB) (SDE)

FREYSSINET INTERNATIONAL ET CIE, FREYSSINET, INC., AND ABC CORPS 1-10,

Defendant.

*Appearances:*

*For the Plaintiff:*
AMBER D. MORRISON
ARNOLD P. PICINICH
CATHERINE COSTAGLIOLA
YASAMAN ZAHRA MAHDI
MICHAEL R. YELLIN
Cole Schotz P.C.
25 Main Street
Court Plaza North
Hackensack, NJ 07601

*For the Defendants:*
RICHARD J. ABRAHAMSEN
Abrahamsen Law Firm LLC
1001 Avenue Of The Americas
Suite 410
New York, NY 10018

**BLOCK, Senior District Judge:**

Plaintiff Hardwire LLC ("Hardwire") brought this action against Freyssinet International Et Cie, Freyssinet, Inc., and ten unidentified subsidiaries and/or related companies (collectively, "Defendants"), alleging several federal trade secret and business tort claims arising from Defendants' alleged misappropriation of Hardwire's proprietary bridge cable shielding technologies. Pending before the Court is Defendants' motion for summary judgement on each of Hardwire's claims pursuant to Federal Rule of Civil Procedure 56.  As explained below, the motion is denied in its entirety.

1

Defendants previously moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), raising essentially identical arguments regarding Hardwire's claims' statutes of limitations. *See* Feb. 8, 2023, Mem. and Order ("M&O"), 11, ECF No. 45. In denying that motion, the Court issued a thorough 34-page order describing the applicable statutes of limitations and identifying what evidence Defendants would need to prove that the statutes of limitations had in fact run. In the years since the Court denied the previous motion, Hardwire has produced 40,000 documents. From these documents, Defendants have found a few dozen emails between Hardwire employees and between Hardwire and the FBI which include mentions of Freyssinet. None of these emails support Defendants' contention that Hardwire knew or should have known that Freyssinet was directly involved in helping Ebaugh steal and recreate their proprietary technology. The Court has reviewed hundreds of exhibits and they make no meaningful impact on the description of the facts found in the Memorandum and Order issued back on February 8, 2023. In the interest of judicial efficiency the Court will dispense with a thorough recounting of the facts and move directly to why the nine causes of action survive Defendants' motion.

## I.

A court should grant summary judgment when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (A dispute as to a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). The movant bears the burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). At this stage of the litigation, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (1986).

Defendants move for summary judgement on three grounds. First, that all of Hardwire's claims are barred by the applicable statutes of limitations, second, that Hardwire cannot show that they suffered a cognizable antitrust injury, and third, that Hardwire's common law claims are preempted by the MUTSA. As explained herein, there are genuine issues of material fact as to each these arguments, and the motion is therefore denied.

As explained in the Court's Order on the motion to dismiss, the majority of the statutes of limitations at issue in this case apply the "discovery rule," meaning that they are triggered by the plaintiff's "actual or constructive notice." *In re Pronetlink Sec. Litig.,* 403 F. Supp. 2d 330, 333 (S.D.N.Y. 2005). Under this rule, "a claim accrues when the plaintiff discovers, or with due diligence should have discovered the infringing act." *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 366 (2024).[1] The discovery rule applies to Hardwires' DTSA, MUTSA, RICO, Breach of contract, Fraud, and Civil Conspiracy claims. *See* M&O, 7–18. The Court will address these claims first, before turning to the remaining three claims—tortious interference, unfair competition, and § 1 Sherman Act—which run from the date of accrual. *Id.*

1. Discovery Rule claims

Hardwire's discovery rule claims all turn on a singular question: when did Hardwire know—or should they have known—that Freyssinet was conspiring with their former employee to misappropriate their proprietary information and trade secrets? The same question resolves each claim because regardless of the elements of the claims their statutes of limitations all begin

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

running when Hardwire was on actual or constructive notice that Freyssinet was directly involved in the various injuries they suffered.

Defendants' argument is, at its core, that Hardwire should have assumed Freyssinet was actively colluding with Ebaugh after the 2015 discovery that Freyssinet had contracted Ebaugh's Infrastructure Armor LLC ("IA") for bridge armor on the Kosciuszko Bridge in Queens, NY. While a jury may eventually agree with this theory, it is insufficient for the purposes of summary judgment. The Court cannot conclude that Hardwire should have assumed that Defendants violated their NDA, and the law, simply because they contracted with IA, especially when there were equally reasonable and lawful explanations for their conduct, e.g. that Ebaugh offered them a more competitive price.

This is not to say there are no documents that support Defendants' theory, but rather that they fail to show a lack of genuine issues of material facts. The most relevant emails are as follows: one internal Hardwire email from July 25, 2013, shares the opinion of an engineer from another company, who "seems to think that Freyssinet will do anything in its power to develop their own armor. Including reverse engineering something that we would provide to them." Def's Ex. 5.[2] In August 2014, another internal email reads "I also don't think Freyssinet is particularly fond of working with us at this point. . . . I am leery about sharing more information about our solution because I don't think the information is secure." Def's Ex. 9. Finally, in July 2018, Hardwire CEO George Tunis summarized his thoughts to an FBI agent, "There is no doubt that by stealing our information with [Ebaugh's] help, Freyssinet has put themselves and [Ebaugh] into the multi million dollar cable protection market." Def's Ex. 30.

---

[2] Def's Ex. Refers to exhibits attached to Defendants' motion for summary judgement filed under seal at ECF No. 131.

Taken together, these emails indicate that Hardwire was suspicious of Freyssinet, but that does not necessarily mean that they should have assumed Freyssinet would violate the law to develop their own armor. The first email describes the opinion of a non-employee, and is therefore not particularly relevant. The second email is more on point, but ultimately fails to prove that Hardwire had anything more than vague suspicions.

The third email is the most challenging. Obviously the email could be reasonably interpreted to mean that Hardwire thought Defendants had stolen their trade secrets. But it is equally reasonable to read the "stealing" language in a colloquial sense as meaning that Freyssinet was profiting from Ebaugh's theft by working with him. From this point of view, Freyssinet was "stealing" Hardwire's information insofar as they were building the bridges that used the armor Ebaugh had stolen, but they were not actually directly involved in Ebaugh's crimes. The Court finds this second theory more convincing given Hardwire's longstanding preoccupation was always with Ebaugh's misappropriation of their trade secrets. Because there are two plausible interpretations of this email, summary judgment is inappropriate.

Freyssinet cites a number of cases, many out of circuit, to support their contention that the emails quoted above indicate Hardwire was on either constructive or actual notice of the infringing acts as early as 2015. All are either easily distinguished or irrelevant. *See RoboticVISIONTech, Inc. v. ABB Inc.*, 726 F. Supp. 3d 364, 366 (D. Del. 2024) (competitor directly hired former employee); *Wang v. Palo Alto Networks, Inc.*, No. C 12–05579 WHA, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014) (plaintiff conceded in deposition that he had read infringing patent application five years before bringing suit); *Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM(EX), 2024 WL 5329913, at *5 (C.D. Cal. Nov. 1, 2024) (defendant directly infringed on copyright, as opposed to contracting with infringer); *Medcenter Holdings Inc. v.*

5

*WebMD Health Corp.*, No. 20-CV-00053 (ALC) (GWG), 2025 WL 965853, at *5 (S.D.N.Y. Mar. 31, 2025) (corporate counsel directly identified defendants four years before bringing suit); *Sejin Precision Indus. Co. v. Citibank, N.A.*, 726 F. App'x 27, 31 (2d Cir. 2018) (Defendants' involvement was revealed in publicly filed documents and reported in the press); *Pinkerton Tobacco Co., LP v. Kretek Int'l, Inc.*, No. 2:20-CV-08729-SB-MRW, 2022 WL 17224677, at *5 (C.D. Cal. Oct. 27, 2022) (relying on California law); *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 636 (N.D. Cal. 1993) (same); *Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597, 600–603 (N.D. Cal. 1989), aff'd, 916 F.2d 516 (9th Cir. 1990) (same and Plaintiff learned of improper disclosure of trade secrets within days, failed to file within three years); *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000) (plaintiff received indisputable proof of confidentiality agreement violation more than six years before filing suit).

It is telling that Defendants fail to identify any cases with facts similar to those before the Court. While the emails quoted above support their theory, the majority of the emails provided to the Court show that Hardwire maintained a laser-like focus on Ebaugh as the source of their injuries, and that they understood Freyssinet as the lucky beneficiary of Ebaugh's misdeeds. This belief is encapsulated in the presentation that Hardwire gave to the FBI in early 2015, which concluded with a slide reading: "Bottom Line: [Ebaugh] stole Hardwire Intellectual Property, trade secrets pricing data, email files, and computer data. He is competing against Hardwire, and won the K bridge job as a result. Using [Ebaugh's] information, the French company, Freyssinet, is taking cabling jobs . . . and is eroding price." Def's Ex. 11 at 514. The presentation shows that Hardwire believed, reasonably, that Ebaugh alone stole their information, and that Freyssinet (a foreign company) was benefiting from Ebaugh's crime. In the Court's view, Freyssinet was often

6

mentioned in these messages because it is a French company and Hardwire assumed the FBI would be more interested in the dispute if there was an international element.

Taken together, this evidence could indicate that Hardwire was on constructive notice of Freyssinet's involvement in Ebaugh's scheme, but it also may not. The Court cannot confidently answer, and therefore there are genuine issues of material fact as to when and what Hardwire should have known about Defendants' involvement in their injuries. A jury must decide when the statues of limitations began to run on Hardwire's claims. The motion is therefore denied as to the MUTSA, DTSA, RICO, Breach of contract, Fraud, and Civil Conspiracy claims.

2.   Other claims

Hardwire's state law claims for Tortious Interference and Unfair Competition must have been brought within three years of the actions' accrual. N.Y. C.P.L.R. § 203(a). In its Order on the motion to dismiss, the Court observed that the Complaint contained several incidents that fell within the 3-year statute of limitations and which could plausibly satisfy the elements of these claims. *See* M&O, 14–16. In their current motion, Defendants reiterate the same arguments and offer no new evidence. As Defendants have failed to show the Court any facts revealed in discovery that would change the Court's previous determination, the motion for summary judgement is denied insofar as it relates to Tortious Interference and Unfair Competition.

Defendants also argue—again—that Hardwire's § 1 Sherman Act claim is time barred because it is subject to a four-year statute of limitations. The statute of limitations on antitrust claims runs from the time of the underlying act which "injure[d] a plaintiff's business," but where there is a continuing conspiracy, it runs from "the commission of [each] act" that causes injury and could constitute a separate cause of action. 15 U.S.C. § 15b; *Zenith Radio Corp. V. Hazeltine Res., Inc.,* 401 U.S. 321, 338 (1971). The Court denied the motion to dismiss on this

theory, finding that the Complaint plausibly pled that Defendants' had "restrained Hardwire (and others) from fairly competing in [the] armor market" between 2016 and 2018. M&O, 13. In their current motion, Defendants again insist that Hardwire's claims are time barred without pointing to any new evidence or raising any novel arguments. The motion for summary judgement is therefore denied as to the Sherman Act claim. While Hardwire may be ultimately unable to recover for injuries suffered before December 2017, the Court has seen no evidence that requires the claim to be dismissed in its entirety.

Defendants also seek to relitigate their contention that Hardwire's antitrust claim fails as a matter of law because the bidding process was competitive and resulted in a reduction of prices. However, as the record is silent, and discovery has not occurred on these issues, the Court declines to reconsider its previous determination that the Complaint adequately pleads a cause of action under § 1 of the Sherman Act.

Finally, Defendants contend that Hardwire's common law claims are preempted by the MUTSA to the extent that they relate to the misappropriation of trade secrets. However, Defendants conveniently failed to alert the Court to the fact that this issue was already considered and rejected in Hardwire's lawsuit against Ebaugh. *See Hardwire, LLC v. Ebaugh*, 2020 WL 5077469, at *1 (D. Md. 2020). There, Judge Bredar denied a similar motion, holding that "misappropriated confidential information is not a trade secret, and as such, common law claims relating to such confidential information are not preempted by the MUTSA." *Id.* at *4. Indeed, the MUTSA explicitly preempts common law claims predicated on the theft of trade secrets, and expressly does not displace "[other] civil remedies that are not based upon misappropriation of a trade secret." Md. Code Ann., Com. Law § 11-1207. As Hardwire's

8

common law claims are predicated on the misappropriation of their proprietary information, not their trade secrets, the claims survive and the motion is denied.

## CONCLUSION

Accordingly, Defendants' motion is denied in its entirety. Years of discovery has done little to change the landscape of this case. Ultimately a jury must decide when the statute of limitations began to run on Hardwire's claims.

**SO ORDERED**.

 _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 22, 2026