UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HARDWIRE, LLC

Plaintiff,

-against-

FREYSSINET INTERNATIONAL ET CIE, FREYSSINET, INC., AND ABC CORPS 1-10,

Defendants.

**MEMORANDUM AND ORDER**
Case No. 1:21-CV-6870 (FB) (RML)

*Appearances:*
*For the Plaintiff:*
ARNOLD P. PICINICH
MICHAEL R. YELLIN
Cole Schotz P.C.
25 Main Street
Court Plaza North
Hackensack, NJ 07601

*For the Defendants:*
ADAM R. MANDELSBERG
DENNIS C. HOPKINS
MATTHEW A. LEMBO
LAMARTE WILLIAMS, JR.
Ashurst Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036

**BLOCK, Senior District Judge:**

Defendants Freyssinet International Et Cie and Freyssinet, Inc. (collectively, "Freyssinet") move for reconsideration of the Court's memorandum and order dated June 22, 2026, denying Freyssinet's motion for summary judgment. Dkt. 143. For the following reasons, the motion is granted in part, to clarify the governing standard. It is otherwise denied, and the denial of summary judgment stands.

The Court recounted the facts at length in its memorandum and order denying Freyssinet's motion to dismiss. Dkt. 45. Discovery since then has not materially changed that account, so the Court does not restate it and discusses only the facts relevant to this motion.

## I. Legal Standard

Reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). The Second Circuit has explained that "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). Instead, "a party may move for reconsideration and obtain relief only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013).

## II. Discussion

Freyssinet argues that the Court's application of the pertinent discovery rule was a clear legal error. Dkt. 148 at 1. Hardwire's federal claims under the DTSA and RICO are governed by federal law, and its claims under the MUTSA and its state-law claims for breach of contract, fraud, and civil conspiracy are governed by Maryland law. The parties agree that the discovery rule and the doctrine of fraudulent concealment apply under each body of law. Dkt. 131–-95 at 10–11; Dkt. 148 at 6; Dkt. 152 at 6–7, 8–9.

Freyssinet contends that the Court should have applied the inquiry notice standard to Hardwire's discovery of its injury, not to Hardwire's discovery of Freyssinet's alleged role in

causing that injury. Dkt. 148 at 2–4. It argues that, under applicable Maryland and federal law, the identity of a particular defendant is not a necessary element to trigger the running of the statute of limitations. *See Behrens v. JPMorgan Chase Bank, N.A.*, 2024 WL 1090856, at *1 (2d Cir. Mar. 13, 2024); *Doe v. Archdiocese of Wash.*, 114 Md. App. 169, 188 (1997). On this view, once Hardwire was on notice that it had suffered a trade-secret injury, Hardwire had a duty to investigate all potential claims and all potential defendants connected to that injury, including Freyssinet, regardless of whether Hardwire yet appreciated the nature of Freyssinet's involvement. Dkt. 148 at 3–5.

The Court agrees that its June 22 order framed the inquiry imprecisely. The order asked "when did Hardwire know—or should they have known—that Freyssinet was conspiring with their former employee to misappropriate their proprietary information and trade secrets." Dkt. 143 at 3. To the extent that formulation suggests that accrual awaited Hardwire's identification of Freyssinet as a participant in the alleged wrongdoing, it does not reflect the governing standard. The Court clarifies the standard accordingly: the relevant question is when Hardwire knew or reasonably should have known that it had been injured, not when it identified each entity responsible for that injury.

With that clarification, the Court agrees with Freyssinet that no reasonable jury could find that Hardwire was unaware, by 2015, that it had been injured by the alleged trade-secret misappropriation. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Dkt. 148 at 5–6.

This conclusion does not end the inquiry. Notice of injury triggers a duty to investigate, but a plaintiff on inquiry notice is charged only with the knowledge that a reasonably diligent investigation would have revealed. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir.

2012); *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–49 (1988). The clarified standard therefore fixes when Hardwire's duty to investigate arose; it does not establish what that investigation would have uncovered, or when. *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 363 (2d Cir. 2013). Whether Hardwire's claims against Freyssinet are untimely thus depends on whether its investigation was reasonably diligent and on whether a diligent investigation would have revealed Freyssinet's alleged role.

Under both federal and Maryland law, whether Hardwire exercised reasonable diligence in investigating, what that investigation should have uncovered and when, and whether Freyssinet concealed its alleged role are ordinarily questions of fact for the jury rather than the court to decide. *Robertson v. Seidman & Seidman,* 609 F.2d 583, 592–93 (2d Cir. 1979) (whether a plaintiff "exercised due diligence, and thus is not precluded by the statute of limitations from maintaining this action, is a question of fact that should be determined by the jury as the trier of the facts"); *accord Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 96 (2000) (diligence and concealment); *see also Thompson v. Metro. Life Ins. Co.,* 149 F. Supp. 2d 38, 49–54 (S.D.N.Y. 2001) (denying summary judgment where the record raised fact questions on diligence and concealment, and noting that granting summary judgment on inquiry notice grounds is "extraordinary" and appropriate only in "extreme circumstances") (quoting *In re Prudential Sec. Inc.*, 930 F. Supp. 68, 75 (S.D.N.Y. 1996)).

**A. Reasonable Investigation**

Hardwire was therefore on notice of its injury, and under a duty to investigate, by 2015. But that does not resolve whether Hardwire's investigation was reasonably diligent, or whether a reasonably diligent investigation would have revealed Freyssinet's alleged role. The record presents genuine disputes on both questions.

Hardwire retained a forensic firm in January 2015 upon suspecting Ebaugh of misappropriating its trade secrets. Dkt. 139 at 6–7. It referred the matter to the FBI in March 2015, met repeatedly with federal investigators, and reviewed more than 27,000 files the FBI recovered from Ebaugh. *Id.* Hardwire contends that this investigation implicated Ebaugh alone and did not surface evidence that Freyssinet was directly complicit in the alleged scheme. *Id.* Hardwire also points to evidence of Freyssinet's own conduct that made it difficult for a reasonably diligent investigation to uncover Freyssinet's involvement with Ebaugh. Dkt. 152 at 8–9; Dkt. 139 at 6–17, 19–20.

Whether this evidence is properly characterized as bearing on the reasonableness of Hardwire's investigation or on fraudulent concealment, it creates disputed issues of material fact. If credited, this evidence would support a finding that Hardwire's investigation was reasonably diligent, and that Freyssinet's alleged role was not something a diligent investigation would have uncovered during the relevant period. *See Cohen*, 711 F.3d at 363 ("it does not follow that reasonable diligence will in all circumstances result in discovery of any lawsuit"); s*ee also Ouellette v. Beaupre,* 977 F.3d 127, 138 (1st Cir. 2020) (recognizing that where a defendant concealed its involvement, even a reasonably diligent investigation may not have revealed the predicate facts).

What a diligent investigation would have uncovered here — whether it would have disclosed Freyssinet's alleged role, or whether, as Hardwire contends, it would have continued to point to Ebaugh alone — is itself the disputed factual question this record presents.

Accordingly, whether Hardwire's investigation was reasonably diligent, and whether that investigation should have revealed Freyssinet's alleged role before the November 2020

document production, remain genuinely disputed. Summary judgment is inappropriate on this record.

**B. Fraudulent Concealment**

Hardwire separately contends that Freyssinet's own conduct concealed the basis for its claims against Freyssinet. Fraudulent concealment tolls the limitations period where the plaintiff was kept in ignorance of its cause of action by the defendant's fraud, and the plaintiff exercised ordinary diligence in attempting to discover it. *Frederick Rd.*, 360 Md. at 98–99; *see also Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 603 (2d Cir. 2024). Under federal law, plaintiff must establish (1) that defendant concealed from plaintiff the existence of its cause of action, (2) that plaintiff remained ignorant of the claim until a point within the limitations period before suit, and (3) that plaintiff's continuing ignorance was not attributable to lack of diligence on plaintiff's part. *Phhhoto*, 123 F.4th at 603 (quoting *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). Concealment need not take the form of an express denial; a partial explanation that omits the wrongful fact can itself be an affirmative act "intended to exclude suspicion and prevent inquiry." *Phhhoto*, 123 F.4th at 605–06.

Hardwire has identified evidence that Freyssinet represented Ebaugh as merely a third-party subcontractor, assured Hardwire that it was complying with the parties' non-disclosure agreement, and did not disclose its arrangement with Ebaugh's company, Infrastructure Armor, until that arrangement surfaced in document production in November 2020. Dkt. 152 at 8–9; Dkt. 139 at 6–17, 19–20.

A jury crediting this evidence could find that these were affirmative representations, not mere silence, intended to keep Hardwire focused on Ebaugh while Freyssinet's own alleged role remained hidden. That finding would also bear on the second element. If Freyssinet's conduct

kept Hardwire from learning of its role until November 2020, a jury could find that Hardwire remained ignorant of its claims against Freyssinet until a time within the limitations period. The third element turns on Hardwire's diligence, and the evidence discussed in Part II.A, *supra*, creates a genuine dispute on that question as well.

Whether Freyssinet concealed its role, whether Hardwire remained ignorant of it, and whether that ignorance is attributable to a lack of diligence are therefore questions for the jury. *See Frederick Rd.*, 360 Md. at 96; *Robertson*, 609 F.2d at 592–93.

## III. Conclusion

For the foregoing reasons, Freyssinet's motion for reconsideration is GRANTED IN PART, to clarify that Hardwire's duty to investigate arose upon notice of its injury, not upon notice of Freyssinet's particular role in causing that injury. The motion is otherwise DENIED. Genuine issues of material fact remain as to whether Hardwire's investigation was reasonably diligent, and whether that investigation should have revealed Freyssinet's alleged role before the November 2020 document production. Genuine issues also remain as to whether Freyssinet's conduct tolled the limitations period through fraudulent concealment. The denial of summary judgment on Hardwire's DTSA, MUTSA, RICO, breach of contract, fraud, and civil conspiracy claims therefore stands, and these questions will be resolved by a jury.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 1, 2026